# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BOBECK REAL ESTATE COMPANY, INC., <br>     Plaintiff, <br><br> v. <br><br> FRONTIER NORTH INC. f/k/a VERIZON <br> NORTH, INC. f/k/a GTE NORTH, INC. f/k/a <br> GENERAL TELEPHONE COMPANY <br> OF INDIANA, INC., <br>     Defendant. | CAUSE NO.: 1:14-CV-93-PRC |

## OPINION AND ORDER

This matter arises from a dispute between a landlord Plaintiff and the Defendant, a former commercial tenant. Plaintiff alleges in the Complaint that Defendant breached the maintenance and repair obligations under the lease by committing waste on the premises, neglecting necessary maintenance, and allowing the premises to deteriorate in several respects. Defendant seeks partial summary judgment on construction of the lease and summary judgment on damages.

Before the Court are Frontier North Inc.'s Motion for Summary Judgment [DE 27], filed by Defendant Frontier North Inc. f/k/a Verizon North, Inc. f/k/a GTE North, Inc. f/k/a General Telephone Company of Indiana, Inc. ("Frontier") on April 1, 2015; Frontier North, Inc's Motion to Exclude Plaintiff's Expert Testimony [DE 29], filed by Frontier on April 1, 2015; Frontier's Motion to Strike Inadmissible Evidence Submitted by the Plaintiff in Opposition to Frontier's Motion for Summary Judgment [DE 39], filed by Frontier on May 22, 2015; and Frontier's Motion to File Exhibit to Its Reply in Support of Its Motion for Summary Judgment Under Seal [DE 43], filed by Frontier on May 22, 2015. All motions are fully briefed and ripe for ruling.[1]

---

[1] Northern District of Indiana Local Rule 56-1 requires the nonmoving party to file a Statement of Genuine Issues with the response brief. To the Court's pleasure, Plaintiff's carefully organized Statement of Genuine Issues complies with the meaning and spirit of the Rule in a way that the Court does not often see.

**PROCEDURAL BACKGROUND**

On February 21, 2014, Plaintiff filed a Complaint in the Allen County, Indiana, Circuit Court against Frontier Communications Corporation and Verizon Communications, Inc. f/k/a GTE North Inc. f/k/a General Telephone Company of Indiana, Inc. On March 19, 2014, Plaintiff filed an Amended Complaint, naming as defendant Verizon North, Inc. f/k/a GTE North Inc. f/k/a General Telephone Company of Indiana, Inc. The action was removed to this Court on March 24, 2014, and an Answer was filed on March 28, 2014.

On June 25, 2014, Plaintiff filed a Second Amended Complaint with leave of Court, naming as defendant Frontier North Inc. f/k/a Verizon North, Inc. f/k/a GTE North, Inc. f/k/a General Telephone Company of Indiana, Inc. ("Frontier"). Plaintiff alleges that, in 1982, Plaintiff and Frontier's predecessor General Telephone Company of Indiana, Inc. entered into a Real Estate Lease ("Lease"). Plaintiff alleges that Frontier breached the Lease terms relating to maintenance and repair of the Premises, resulting in damages to Plaintiff for deferred maintenance, restoration, and repairs. Plaintiff alleges that it is unable to lease the Premises to a new tenant until the Premises have been properly repaired and restored. Plaintiff seeks damages in an amount necessary to repair and restore the Premises and for the loss of rent income as well as attorney fees and costs. Frontier filed an Answer to the Second Amended Complaint on June 26, 2014.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254,

3

1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not

to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

On June 4, 1982, Plaintiff and General Telephone Company of Indiana, Inc. ("GTE") entered into a Real Estate Lease ("Lease") for property described as 3301 Wayne Trace in Fort Wayne, Indiana, for a term ending May 31, 2008. GTE is a predecessor of Defendant Frontier; Frontier and its predecessors are collectively referred to herein as "Frontier." The maintenance provision of the Lease provides that Frontier agrees

> at all times during the term of this Lease, at its own expense: To maintain all existing and hereinafter constructed or established improvements on the Demised Premises, including all parking areas, grounds and walkways in good and safe condition, it being the intent and agreement of the parties hereof that all repairs that may be required, both interior and exterior (including lawn and landscape area maintenance and repair), structural and non-structural, ordinary and extraordinary, foreseen and unforeseen, shall be the obligation of Lessee so that Lessor shall in no event be required to make any repairs or replacements to the Demised Premises; To paint and redecorate the exterior and interior of any buildings or other improvements on said Premises when necessary or when Lessee desires to do so, and *to maintain said Premises in as good condition as when first occupied, save and except for ordinary wear and tear*, damage intentionally caused by Lessor, its agents, employees, visitors, subtenants and assigns; To provide for the routine servicing and maintenance of all machinery and equipment on said Premises in accordance with sound maintenance practices, and, when any items of machinery or equipment become wholly worn from normal use, to cause such repairs or replacements to be made of such machinery or equipment as may be required for its operation[.]

(Def. Br., Ex. 2, ¶ 3(e) (emphasis added).

The surrender provision of the Lease requires Frontier "to return and surrender the Demised Premises of Lessor at the termination of the term of this Lease, *in as good or the same condition as when entered upon by Lessee except for ordinary wear and tear*." *Id*. at ¶ 3(f) (emphasis added).

In a subsequent covenant, the Lease provides that Frontier is "to refrain from committing, suffering or permitting the commission of waste in or upon the Demised Premises." *Id*. at ¶ 3(h).

Paragraph 6 of the Lease allows for the termination and forfeiture of all of Frontier's rights under the Lease if Frontier defaults in the performance of any condition of the Lease and if, within sixty days after notice of the default from Plaintiff, Frontier fails to cure the default. *Id*. at ¶ 6. The anti-waiver clause of the Lease provides that "[t]he failure or omission of Lessor to declare this Lease terminated because of the default of Lessee in the performance of any of its covenants herein contained shall not operate to bar, abridge, or destroy the right of Lessor or estop Lessor to declare this Lease terminated upon any subsequent forfeiture or cause of forfeiture of this Lease by Lessee." *Id*. at ¶ 7.

On October 29, 1993, a First Amendment to the Lease was executed, revising the legal description of the Premises and increasing from 90 to 100 days the rent abatement following a destruction of the Premises.

In February 2007, a Second Amendment to the Lease was executed, extending the expiration of the Lease to May 31, 2013, increasing the monthly rent annually, and adding, among other things, the following paragraphs:

> 5. Improvement Allowance. Lessee shall be entitled to a repair or improvement allowance equal to $25,000.00 (the "Allowance"). The foregoing amount may be expended by Lessee at any time following mutual execution and delivery of this Amendment for improvements and repairs to the Premises. Upon completion of any repair or improvement for which Lessor is requested to pay, Lessee shall deliver to Lessor invoices relating to such improvements and unconditional lien releases, if applicable. Lessor shall reimburse such amounts within twenty-one (21) days following delivery and approval of such information and lien releases for such work.
>
> 6. HVAC and Roof Maintenance. Lessee hereby acknowledges that Lessee is responsible for all repairs and replacements of the HVAC and all repairs and replacements in connection with the roof, provided, however, Lessee may use the

>       Allowance for reimbursement of the costs of such repairs and replacements. Lessee will continue to maintain, repair and replace the HVAC and roof as currently required under the Lease.

(Def. Br. Ex. 5).

In late 2012, Frontier elected not to renew the Lease and surrendered the Premises at the end of May 2013.

Plaintiff originally paid $650,000.00 for the Premises and purchased it for the purpose of leasing it to Frontier. The building was more than 20 years old at the time Plaintiff purchased it, and Plaintiff invested no money to improve the Premises before the Lease began. Between 1982 and 2013, Frontier paid Plaintiff over $12 million in rent pursuant to the Lease terms, with a monthly rent of $27,333.33 for the 28 years of the original Lease and a monthly rent of $50,250.31 in 2008-2009, which increased each year until it reached $56,557.17 in 2012-2013.

At the beginning of the Lease term, Frontier spent over $3 million to "gut" and remodel the interior of the building on the Premises, which had previously been occupied by International Harvester's model truck facility, to accommodate Frontier's need for office and warehouse space for its intended use of the Premises. Over the thirty years of its tenancy, Frontier installed a new roof in 1986, repaired and maintained the roof, including the subsequent replacement of the flashings and a portion of the roof in 2013, paved the parking lot and added new paved parking lots and sidewalks, insulated the building, installed new, more efficient boilers, transitioned from oil heat to natural gas, replaced windows, and installed brick and masonry to the front of the building.

Plaintiff is seeking more than $1.7 million in damages, comprised of $594,385.00 to replace the roof, $382,150.00 to resurface the parking lot, and $801,563.81 to repair and restore the building

and equipment, including new carpet and flooring, duct cleaning and general cleaning services, and exterior wall repair and painting. (Def. Br., Ex. 7, p. 3); (Def. Br., Ex. 12).

## ANALYSIS

Frontier first seeks partial summary judgment on the legal question of whether the Lease's surrender provision alone controls in this case. In addition, Frontier seeks summary judgment on Plaintiff's breach of contract claim, arguing that Plaintiff cannot establish the condition of the Premises at the time they were first occupied by Frontier in 1982 and, thus, cannot show that the Premises were not in as good or the same condition except for ordinary wear and tear when Frontier vacated the Premises in 2013. The Court considers each argument in turn. As an initial matter, the Court grants Frontier's motion to file its exhibit under seal, finding the motion well taken and good cause shown and noting the lack of objection.

### A. Lease Interpretation

Plaintiff's Second Amended Complaint alleges that Frontier breached the Lease terms relating to maintenance and repair, quoting the maintenance provision in Paragraph (e), the surrender provision in Paragraph (f), and the anti-waste provision of Paragraph (h). In the motion, Frontier seeks summary judgment on the legal issue of whether the surrender provision alone controls this dispute. Frontier contends that the maintenance provision in the Lease controlled during the term of the Lease but cannot now be used to enlarge Frontier's obligation under the surrender provision, which is to return the premises "in as good or the same condition as when entered upon by Lessee except for ordinary wear and tear."

"Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *TW Gen. Contracting Servs., Inc.*

*v. First Farmers Bank & Tr.*, 904 N.E.2d 1285, 1287-88 (Ind. Ct. App. 2009) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)). Under Indiana law, the goal of contract interpretation is to determine the intent of the parties at the time they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) (citing *First Fed. Sav. Bank of Indiana v. Key Mkts., Inc.*, 559 N.E.2d 600, 603 (Ind. 1990)). A court begins with "the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* (citing *Trustcorp Mortg. Co. v. Metro Mortg. Co., Inc.*, 867 N.E.2d 203, 213 (Ind. Ct. App. 2007)).

When necessary, the court may look to the four corners of the document to understand the text of a disputed provision. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). "The four corners rule states that where the language of a contract is unambiguous, the parties' intent is to be determined by reviewing the language contained within the 'four corners' of the contract, and 'parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress, or undue influence.'" *Id.* (citing *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004)). A contract is ambiguous only if a reasonable person could find its terms susceptible to more than one interpretation. *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007).

The maintenance provision required Frontier to "maintain all existing and hereinafter constructed or established improvements," including maintaining the parking areas, grounds and walkways in "good and safe condition," such that all repairs, both interior and exterior, structural and non-structural, ordinary and extraordinary, were the responsibility of Frontier and that Plaintiff "shall in no event be required to make any repairs or replacements" to the Premises. The

9

maintenance provision required Frontier to "paint and redecorate the exterior and interior" "when necessary or when Lessee desires to do so." Of importance on the instant motion, the provision required Frontier to "maintain said Premises in as good condition as when first occupied, save and except for ordinary wear and tear." Finally, the maintenance provision required Frontier to "provide for the routine servicing and maintenance of all machinery and equipment" and to make repairs or replacements when items of machinery or equipment became "wholly worn" "as may be required for its operation."

During the term of the Lease, Plaintiff did not notify Frontier of any violation of the maintenance provision of the Lease. It was not until Frontier elected not to renew the Lease that Plaintiff raised concerns with the condition of the Premises.

Thus, Frontier reasons that, once the Lease terminated and Frontier surrendered the Premises, the surrender provision alone governed Frontier's obligations. In contrast, Plaintiff contends that both the maintenance and surrender provisions are at issue and that genuine issues of material fact exist with regard to each provision.

When considering the relevant Lease provisions in the context of the contract as a whole and harmonizing the provisions, the plain reading of the Lease is that Frontier had both a duty to maintain the premises during the term of the Lease in "as good condition as when first occupied except for ordinary wear and tear" and then similarly to surrender the Premises at the conclusion of the term of the lease in "as good or the same condition as when entered upon by Lessee except for ordinary wear and tear." Nothing in the Lease indicates that Plaintiff's right to enforce the maintenance provision terminates once Frontier surrenders the Premises. If anything limits Plaintiff's right to bring a claim under the maintenance provision, it would be Indiana's applicable

six-year statute of limitations, *see* Ind. Code § 34-11-2-7. The maintenance provision does not entitle Plaintiff to have the Premises returned in better condition or in a condition perceived by Plaintiff as suitable for leasing to a new tenant without any capital investment by Plaintiff.

In *Shapiro v. Valmont Industries, Inc.*, the sublease at issue required the lessee to keep the premises and building in good condition, ordinary wear and tear excepted, and to perform "maintenance and repairs" to the premises and building. No. S90-102, 1991 WL 472593, at *2 (N.D. Ind. Aug. 16, 1991). In addition, the prime lease, the obligations of which were assumed in the sublease, required the lessee to "make all necessary and appropriate repairs of every kind and nature, whether interior or exterior, structural or non-structural, ordinary or extraordinary, foreseen or unforeseen." *Id*. In a separate paragraph, the sublease required the lessee to surrender the premises in substantially the same condition as when received, excepting ordinary wear and tear. *Id*. at *2. The property owner brought suit, alleging that the lessee had failed to perform maintenance and repairs and otherwise failed to maintain the property in good repair. *Id*. The lessee responded that it was only required to maintain the property in substantially the same condition as received, ordinary wear and tear excepted, and that the property owner was demanding improvements to the property to put it in "tip top" shape. *Id*.

Construing the provisions of the lease as a whole, the court in *Valmont Industries* found that the maintenance provision and the surrender provision should be harmonized but found that they did not require the lessee to place the property in "tip top" shape. *Id*. at *6. The court explained that, when considered together, a reasonable reading of the sublease is that the parties intended for the lessee to assume the obligation of performing all repairs necessary to maintain the property in the condition it was in at the time the property was leased five years earlier. *Id*.

In *Kann v. Brooks*, the lease for a stone mill, executed in 1903, contained a provision that the lessee keep the "premises and articles hereby leased in good and sufficient repair at their . . . expense." 101 N.E. 513, 514 (Ind. App. 1913). It also contained a provision that the lessee agreed to "use due care, and at the termination of this lease surrender the possession of the said premises and appurtenances to the [lessor] in like order and repair as the same are now, reasonable wear and tear excepted." *Id*. The lease was in force through March 1908, after which the lessor sued to recover damages for an alleged breach of the covenants of the lease. *Id*. The lessor argued that the terms of the lease required the lessee to make repairs made necessary by natural wear, decay, and the use of the plant and premises, while the lessee argued that it was only required to make repairs as necessary to keep the plant in as good a condition and repair as they were at the beginning of the lease. *Id*. Construing the lease to give effect to all of its parts, the court found that the "parties intended that the lessees should keep the leased property in sufficient repair at their own cost and expense, and upon the termination of the lease should surrender possession of the mill and all its appurtenances to the owner in as good a condition of repair as the same were in when the lease was made, reasonable wear and tear excepted." *Id*. at 515. The court found that the lessee was required to keep the premises "in good and sufficient" repair for the intended use but was "not required to make good to the lessor the loss resulting from the depreciated value of the leased property occasioned by the reasonable wear and tear of the same during the term of the lease." *Id*.

The instant case differs from both *Valmont Industries* and *Kann* in that the term of the sublease in *Valmont Industries* was five years and the lease in *Kann* was renewed year to year for a term of five years, whereas the initial term of the net Lease in this case was twenty-five years; the court in *Valmont Industries* considers the length of the lease to be a factor in determining the extent

12

of the structural maintenance and repairs imposed upon the lessee. *Id*. at *7-9. However, the cases further differ in that, in this case, it is not only the surrender provision but *also* the maintenance provision itself limiting the obligation imposed upon Frontier to make repairs "to maintain said Premises in as good condition as when first occupied, save and except for ordinary wear and tear."

Like in *Valmont Industries* and *Kann*, in this case a reasonable reading of the two provisions together is that Frontier was required to maintain the premises in as good condition as when first occupied, except for ordinary wear or tear, and that upon surrender, Plaintiff was entitled to the return of the property in the same or similar condition as when it was first leased, except for ordinary wear or tear, not more. This construction considers the document as a whole and harmonizes the provisions. Thus, both the maintenance provision and the surrender provision are at issue in this case.

Frontier also argues that, even if the maintenance provision applies, Plaintiff is barred from asserting any claims under that provision on the grounds of waiver or estoppel because Plaintiff did not raise the claims any time during the thirty-year term of the Lease. Plaintiff collected over $12 million in rent for three decades without complaining of the condition of the Premises and without sending a notice of default. Frontier argues that Plaintiff should not now be permitted to demand numerous repairs to obtain payment for additional improvements after the expiration of the Lease.

Waiver is the intentional abandonment or relinquishment of a known right. *Waxman Indus., Inc. v. Trustco Dev. Co.*, 455 N.E.2d 376, 378 (Ind. Ct. App. 1983). In the context of a breach of contract, "it includes giving up the right to treat the contract as breached by the other party." *Id*. (citing *Ogle v. Wright*, 360 N.E.2d 240, 245 (Ind. Ct. App. 1977)); *see also Tri-State Carbonic, LLC v. Orscheln Farm and Home LLC*, 2011 WL 3878277, at *5 (S.D. Ind. Aug. 31, 2011). "However,

waiver is an affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak or act." *Pohle v. Cheatham*, 724 N.E.2d 655, 659 (Ind. Ct. App. 2000) (citing *Am. Nat'l Bank & Tr. Co. v. St. Joseph Valley Bank*, 391 N.E.2d 685, 687 (1979)). The burden of proof is on the party claiming waiver. *Ogle*, 360 N.E.2d at 245. Estoppel is a "judicial doctrine sounding in equity; the doctrine essentially provides that 'one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other.'" *Tri-State Carbonic*, 2011 WL 3878277, at *5 (quoting *Brown v. Branch*, 758 N.E.2d 48, 51-52 (Ind. 2001)).

In this case, Plaintiff's silence does not constitute waiver. Plaintiff had a contractual right to visit the Premises and did on numerous occasions over the thirty-year term of the lease without ever indicating that any repairs were required until Frontier indicated that it would not be renewing the Lease. It also appears that Plaintiff did not raise any concerns about the condition of the Premises during the renegotiation of the Lease in 2007. Nevertheless, there is no evidence that Plaintiff affirmatively indicated that no repairs were necessary nor is there any evidence of an intent on Plaintiff's part to waive its right to claim that Frontier breached the Lease with regard to the maintenance provisions. Although Frontier faults Plaintiff for not issuing a written notice of default, Frontier does not identify any part of the Lease requiring notice in these circumstances. *Compare* (Def. Br., Ex. 1, § 6(b)) (requiring Plaintiff to give Frontier sixty days to cure a default after notice before Plaintiff can terminate the Lease). The Court cannot find on this evidence that Plaintiff waived its right to claim a breach of the maintenance provision. In addition, the Court declines to invoke the doctrine of estoppel, as there is no evidence that Plaintiff induced Frontier to act in any particular manner.

Therefore, the Court denies Frontier's partial motion for summary judgment on the request that the Court find that the rights and obligations of the parties are defined by the surrender provision alone. However, because a breach of the maintenance provision is measured by the same standard as the surrender provision–namely the comparison of the condition of the Premises at the time they were first occupied with the condition at the time of the alleged breach, the analysis of the breach of lease claim is the same under either provision, as set forth in the next section.

### B. Breach/Damages

Frontier contends that, even if the maintenance provision is applicable, Frontier is entitled to summary judgment on all of Plaintiff's claims because Plaintiff cannot establish damages in this case. The Court agrees. Moreover, this lack of evidence means that Plaintiff cannot prove that Frontier breached its duty under the lease agreement.[2] Both the maintenance provision and the surrender provision of the Lease require a comparison of the condition of the Premises at the time the Premises were first occupied with the condition at the time of the alleged breach. The maintenance provision requires Frontier to "maintain said Premises in as good condition as when first occupied, save and except for ordinary wear and tear." The surrender provision requires that Frontier return the Premises "in as good or the same condition as when entered upon by Lessee except for ordinary wear and tear."

Frontier asserts in its motion that Plaintiff has no evidence of the condition of the Premises in 1982 when GTE first occupied the Premises, specifically noting that Plaintiff's expert, George Petras, has no knowledge of the original condition of the Premises and gives no opinion of the

---

[2] A lease is a type of contract, and the elements of a breach of contract claim are the existence of a contract, the defendant's breach of the contract, and damages. *Indiana Bureau of Motor Vehicles v. Ash*, 895 N.E.2d 359, 365 (Ind. Ct. App. 2008).

original condition of the Premises and that Plaintiff has identified no other evidence of the original condition of the premises through discovery. In response, Plaintiff first attempts to shift the burden of proof to Frontier by arguing that Frontier "has offered no evidence on the condition of the premises when entered by GTE in 1982 and is unable, therefore, to establish that it satisfied the surrender provision of the lease as a matter of law." (Pl. Resp. 4). However, Plaintiff has the burden of proof at trial to prove the condition of the Premises in 1982 and to prove that Frontier breached the provisions of the Lease. And, at the summary judgment stage, Frontier has met its burden of informing the Court of those portions of the pleadings, Petras' testimony, and the lack of evidence that demonstrate that Plaintiff cannot establish an essential element of its claim. Thus, the burden shifts to Plaintiff to offer specific facts to show that there is a genuine issue for trial.

Plaintiff has not met this burden. The court's denial of summary judgment in *Valmont Industries* is instructive. As discussed above, the maintenance and surrender provisions of the prime lease and the sublease in *Valmont Industries* were read together to define the lessee's duty, which required that the premises be surrendered in substantially the same condition as when received. 1991 WL 472593, at *2. To show that the lessee did not return the property in substantially the same condition as when received, the property owner submitted the opinions of two experts who inspected the property when the lessee vacated the premises and who opined that the property had not been maintained during the five-year tenancy of the lessee. *Id*. at *3. The lessee moved to exclude the opinions on the basis that the experts had only inspected the property after the lessee vacated the premises and that the experts did not know what the lessee had done to maintain the premises or what the condition of the property was before the tenancy. *Id*. at *9. The court denied the motion, finding that the arguments went to the weight of the opinions but not to whether they should be

offered. *Id*. Thus, because the property owner offered evidence of the change in condition of the property, there was a genuine issue of material fact for trial. *Id*. at *10.

In contrast, Plaintiff in this case has not produced any specific material evidence regarding the condition of the Premises in 1982 or a change in the condition of the Premises in response to the Motion for Summary Judgment. Plaintiff is correct that the maintenance provision requires that Frontier maintain the improvements to the Premises, including the parking areas and walkways, and make all necessary repairs whether interior or exterior, structural or non-structural, and foreseen or unforeseen. Indeed, the net lease was for a term of twenty-five years. *See Valmont Indus.*, 1991 WL 472593, at *8-9. Nevertheless, those terms were governed by the provision that Frontier maintain the Premises in "as good condition as when first occupied, save and except for ordinary wear and tear." The only evidence Plaintiff designates of the original condition of the Premises is vague testimony by Duane Bobeck that he recalled that the condition of the cement walls of the exterior of the building were in "good shape" and that the exterior of the building was "very attractive," "brick," with "good landscaping," and "very well maintained." (Pl. Resp., Ex. B, 39:16-25; 40:1-4; 45:14-18). These imprecise descriptions are insufficient for Plaintiff to establish the condition of the building in 1982, a necessary showing for a claim of breach of either the maintenance provision or the surrender provision.

Nor did George Petras, Plaintiff's expert, offer an opinion regarding change in the condition of the Premises or any comparison of the Premises at the time he examined them with the original condition at the time the Premises were leased. Rather, he provided an opinion as to the work that is "necessary to restore the premises to a good condition." (Def. Br., Ex. 7, p. 2). Duane Bobeck testified that Plaintiff hired Petras to examine the property and to state whether it was in good

17

condition, and if it wasn't, what work was needed. (Def. Br., Ex. 9, 38:16-39:7). Plaintiff attempts to enlarge the scope of Petras' expert opinion with an Affidavit from Petras submitted with its response brief in which Petras avers that he "was retained by Bobeck Real Estate Company to provide an assessment and opinion concerning the maintenance and condition of the premises," which he says is contained in his report. (Pl. Br., Ex. K, ¶ 4). However, this statement is in direct conflict with the express language of his report as well as the testimony of Duane Bobeck. Even if Petras was retained to provide an assessment and opinion concerning maintenance, his report offers no opinion on maintenance but only on what work is necessary to restore the Premises to a "good condition."

Thus, unlike the property owner in *Valmont Industries*, Plaintiff has not demonstrated a genuine issue of material fact that the Premises were not in "as good condition as when first occupied," and summary judgment in favor of Frontier on Plaintiff's breach of contract claim is appropriate. As a result, Frontier's Motion to Exclude Plaintiff's Expert Testimony and Frontier's Motion to Strike Inadmissible Evidence are moot.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Frontier's Motion to File Exhibit to Its Reply in Support of Its Motion for Summary Judgment Under Seal [DE 43] and **GRANTS in part** and **DENIES in part** Frontier North Inc.'s Motion for Summary Judgment [DE 27], denying the partial motion for summary judgment on the construction of the lease but granting summary judgment on the breach of lease claim. As a result, the Court **DENIES as moot** Frontier North, Inc's Motion to Exclude Plaintiff's Expert Testimony [DE 29] and **DENIES as moot** Frontier's Motion

to Strike Inadmissible Evidence Submitted by the Plaintiff in Opposition to Frontier's Motion for Summary Judgment [DE 39].

The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Frontier North Inc. f/k/a Verizon North, Inc. f/k/a GTE North, Inc. f/k/a General Telephone Company of Indiana, Inc. and against Plaintiff Bobeck Real Estate Company, Inc.

So ORDERED this 31st day of July, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT